IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DUSTIN GRIFFIN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 25-CV-302-JFJ |
| | ) |
| HOWMEDICA OSTEONICS | ) |
| CORPORATION, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

Before the Court is Defendant Howmedica Osteonics Corporation, doing business in Oklahoma under the tradename Stryker Orthopaedics' ("Stryker")[1] Motion to Dismiss or Alternatively, Motion to Transfer (ECF No. 7). For reasons explained below, the motion to transfer is GRANTED.

**I.     Background**

Plaintiff Dustin Griffin ("Plaintiff") filed this action to obtain a declaratory judgment against Stryker. Am. Pet. (ECF No. 2-3). According to the Amended Petition, Plaintiff was employed with Stryker as a sales representative in Oklahoma. *Id.* ¶ 5. During Plaintiff's employment with Stryker, Stryker required Plaintiff to enter into a "Confidentiality, Intellectual Property, Non-Competition and Non-Solicitation Agreement for U.S. Employees" ("Agreement") (ECF No. 2-3 at Exh. A; reproduced at ECF No. 19-1).[2] The Agreement contains "non-

---

[1] Stryker notes in a footnote in its motion that Howmedica Osteonics Corporation is not a correct party to this lawsuit, as Plaintiff was employed by Stryker Employment Company, LLC. ECF No. 7 at 1 n.1. However, Stryker does not seek dismissal on this basis. The Court does not address this issue as not properly raised in the motion.

[2] "When reviewing a motion to transfer venue under § 1404, a court may consider evidence outside the pleadings but must draw all reasonable inferences and resolve factual conflicts in favor of the non-moving party." *Cardoni v. Prosperity Bank*, No. 14-CV-319-CVE-PJC, 2014 WL 3369334, at *4 (N.D. Okla. July 9, 2014) (citing *Huang v. Napolitano,* 721 F. Supp. 2d 46, 48 n .3 (D.D.C.

solicitation" and "non-compete" provisions, pursuant to which Plaintiff is restricted for 12 months following termination of his employment from soliciting Stryker customers or working for certain competitors of Stryker. Am. Pet. ¶ 6. *See* Agreement at §§ 6.2, 6.3. Plaintiff ended his employment with Stryker on May 21, 2025. *Id.* ¶ 8.

Plaintiff initiated this action in state court on May 23, 2025, seeking a declaration that the non-competition and non-solicitation provisions in the Agreement are void and unenforceable as a matter of Oklahoma public policy. *Id.* ¶ 9. Stryker removed this case to federal court based on diversity of citizenship, as Stryker is a New Jersey corporation with its principal place of business in Massachusetts, Plaintiff is a citizen of Oklahoma, and the amount in controversy exceeds $75,000. ECF No. 2 (Notice of Removal).

Stryker moves to dismiss or transfer this case to the Western District of Michigan, Southern Division, pursuant to Federal Rule of Civil Procedure 12(b)(6) and 28 U.S.C. § 1404(a). Stryker relies on the Agreement's forum selection clause at Section 8.2, arguing that it requires all litigation between Plaintiff and Stryker "relating to this Agreement" be brought exclusively in Michigan. Stryker argues Plaintiff engaged in improper forum shopping by "racing to the courthouse" as his employment with Stryker was ending, to avoid suit in Michigan for violating the non-compete and non-solicitation provisions of the Agreement. Plaintiff opposes the motion, arguing that the forum selection clause is not enforceable, and that the case should remain in Oklahoma to enforce Oklahoma's public policy against contractual non-compete and non-solicitation provisions.

---

2010); *United States v. Gonzalez & Gonzales Bonds and Ins. Agency, Inc.*, 677 F. Supp. 2d 987, 991 (W.D. Tenn. 2010)).

II.  **Motion to Transfer**[3]

    A.  **General Standards Governing 28 U.S.C. § 1404(a) Transfers**

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). There may be circumstances in which the "first court to acquire jurisdiction may not be ideally suited to decide the merits," even where the first to file rule would generally apply to favor a plaintiff's chosen forum. *Wakaya Perfection, LLC v. Youngevity Int'l, Inc.*, 910 F.3d 1118, 1124 (10th Cir. 2018) (citation omitted).

"The party moving to transfer pursuant to § 1404(a) bears the burden of establishing that the existing forum is inconvenient." *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1515 (10th Cir. 1991). Section 1404(a) gives a district court discretion "to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness." *Id.* at 1516 (quotation omitted). The district court should consider a range of factors, including (1) "the plaintiff's choice of forum;" (2) "the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses;" (3) "the cost of making the necessary proof;" (4) "questions as to the enforceability of a judgment if one is obtained;" (5) "relative advantages and obstacles to a fair trial;" (6) "difficulties that may arise from congested dockets;" (7) "the possibility of the existence of questions arising in the area of conflict of laws;" (8) "the advantage of having a local court determine questions of local law;"

---

[3] Stryker alternatively seeks dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6), as a means to enforce the Agreement's forum selection clause. However, the Supreme Court has explained that the appropriate mechanism for enforcing a forum selection clause where the transferee forum is within the federal court system is 28 U.S.C. § 1404(a), through the traditional doctrine of *forum non conveniens*. *Atlantic Marine Constr. Co., Inc. v. U.S. Dist. Court for the W. Dist. of Texas*, 571 U.S. 49, 60 (2013). Applying this guidance, the Court considers § 1404(a) to be the appropriate lens through which to consider applicability and enforcement of the forum selection clause. The Court does not further consider Stryker's request for dismissal under Rule 12(b)(6).

and (9) "all other considerations of a practical nature that make a trial easy, expeditious and economical." *Id.* (quoting *Texas Gulf Sulphur Co. v. Ritter*, 371 F.2d 145, 147 (10th Cir. 1967)) (quotation marks omitted).

      **B.**    **Modified Standard Where Valid and Enforceable Forum Selection Clause Exists**

The § 1404(a) analysis changes, however, when the parties' contract contains a valid and enforceable forum selection clause, which "represents the parties' agreement as to the most proper forum." *Atlantic Marine Constr. Co., Inc. v. U.S. Dist. Court for the W. Dist. of Texas*, 571 U.S. 49, 63 (2013) (quotation omitted). An enforceable forum-selection clause alters the traditional § 1404(a) analysis in three ways: (1) the plaintiff's choice of forum merits no weight, and the plaintiff bears the burden of showing why the court should not transfer the case to the agreed forum; (2) the court must deem the private-interest factors of convenience to parties, witnesses, or parties' pursuit of litigation to "weigh entirely in favor of the preselected forum," and the court may consider arguments about public-interest factors only, which will rarely defeat a transfer motion;[4] and (3) upon transfer, the transferee court will not apply the original venue's choice-of-law rules, which in some cases may affect the public-interest considerations. *Id.* at 63-65. A "valid forum-selection clause should be given controlling weight in all but the most exceptional cases." *Id.* (cleaned up). *See id.* at 62 ("Only under extraordinary circumstances unrelated to the convenience of the parties should a § 1404(a) motion be denied.").

To properly apply the § 1404(a) analysis, the Court must first determine whether the Agreement's forum selection clause is valid and enforceable.

---

[4] Public-interest factors include "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; and the interest in having the trial of a diversity case in a forum that is at home with the law." *Atlantic Marine*, 571 U.S. at 62 n.6 (cleaned up).

4

### C.     Agreement Contains Valid and Enforceable Forum Selection Clause

#### 1.     Text of Forum Selection Clause

The parties agree that Section 8.2 of the Agreement governs choice of law and venue for disputes relating to the Agreement. The clause provides:

> **Governing Law and Venue.** Although I may work for Stryker in various locations, I agree and consent that this Agreement shall be interpreted and enforced as a contract of Michigan and shall be interpreted and enforced in accordance with the internal laws of that state without regard to its conflict of law rules. *In such circumstance, I agree and consent that any and all litigation between Stryker and me relating to this Agreement will take place exclusively in Michigan and I consent to the jurisdiction of the federal and/or state courts of that state.* I consent to personal jurisdiction and venue in both such Courts and to service of process by United States Mail or express courier service in any such action. By signing this Agreement, I represent and warrant that I have been advised to and/or have consulted with an attorney and that the attorney and/or myself agree to the terms herein including, but not limited to, the terms of this paragraph.

Agreement at § 8.2 (emphasis added).

#### 2.     Choice of Law Applicable to Forum Selection Clause

The Agreement itself includes a Michigan choice of law provision, which Stryker argues applies to interpretation of the forum selection clause. Agreement at § 8.2. *See Yavuz v. 61 MM Ltd.*, 465 F.3d 418, 427-28 (10th Cir. 2006) (applying contract's choice of law clause to interpret forum selection clause). Plaintiff does not argue otherwise. In any event, federal, Oklahoma, and Michigan law on construction of forum selection clauses are materially similar. Therefore, the Court need not resolve which law governs this issue. *See Hunnicutt v. CHF Sols., Inc.*, No. 10-CV-0042-CVE-FHM, 2010 WL 1078470, at *3 (N.D. Okla. Mar. 18, 2010) (declining to resolve choice of law question on interpretation of forum selection clause, "because federal, Minnesota, and Oklahoma law regarding forum selection clauses are substantially similar, and the interpretation and application of the forum selection clause would not change based on the choice of law"); *id.* at *3 n.6 (explaining that the Oklahoma Supreme Court, citing federal law, "has stated that "absent compelling reasons otherwise, forum selection clauses are enforceable'") (quoting

*Adams v. Bay, Ltd.*, 60 P.3d 509, 510 (Okla. Civ. App. 2002)); *Turcheck v. Amerifund Fin., Inc.*, 725 N.W.2d 684, 688 (Mich. App. 2006) (explaining that, "assuming that certain exceptions do not apply, Michigan courts will enforce an express forum-selection clause as written").

### 3. Enforceability of Forum Selection Clause

Forum selection clauses are presumed valid, and the party resisting enforcement bears the burden to show that enforcement of the clause would be unreasonable under the circumstances. *Milk 'N' More, Inc. v. Beavert,* 963 F.2d 1342, 1346 (10th Cir. 1992) (citing *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972)). Plaintiff does not raise issues of fraud or overreaching related to the validity of the forum selection clause.[5] Instead, the parties dispute whether the Agreement's forum selection clause requires *exclusive* venue in Michigan courts, or whether the Michigan venue is merely permissive.

#### a. Interpretation Standards

Forum selection clauses are generally either mandatory or permissive. *Excell, Inc. v. Sterling Boiler & Mechanical, Inc.,* 106 F.3d 318, 321 (10th Cir. 1997). A mandatory forum selection clause contains clear language indicating that jurisdiction exists only in the designated forum. *See id.* A permissive forum selection clause authorizes jurisdiction in a designated forum, but does not prohibit litigation in a different venue. *See id.* If a forum selection clause is capable of being construed as either permissive or mandatory, it is deemed "ambiguous" and must be

---

[5] Although Plaintiff mentions that the Agreement was a form agreement drafted by Stryker and imposed upon him on a "take it or leave it" basis to continue his employment at Stryker (*see* ECF No. 19 at 1, 14; ECF No. 19-2 (Declaration of Dustin Green)), Plaintiff does not clearly argue that the forum selection clause was the product of fraud, coercion, or overreaching. Even if Plaintiff had raised this argument, it would not be persuasive here. *See Cardoni v. Prosperity Bank*, No. 14-CV-0319-CVE-PJC, 2014 WL 3369334, at *7 (N.D. Okla. July 9, 2014) ("In general, a forum selection clause is enforceable even if one party to the contract had no opportunity to negotiate for the inclusion or exclusion of a forum selection clause.") (citing *Carnival Cruise Lines, Inc. v. Shute,* 499 U.S. 585, 594 (1991)).

construed against the drafter. *K & V Sci. Co. v. Bayerische Motoren Werke Aktiengesellschaft ("BMW")*, 314 F.3d 494, 500 (10th Cir. 2002) (collecting cases).

Traditional contract interpretation principles apply to determine whether a forum selection clause is mandatory or permissive. *See Kelvion, Inc. v. PetroChina Canada Ltd.*, 918 F.3d 1088, 1092 (10th Cir. 2019).[6] Courts interpreting a contract should "determine and enforce the parties' intent from the plain language of the contract itself." *SMB Glob. Servs. Grp., LLC v. Century, Inc.*, No. 304698, 2012 WL 3024135, at *1 (Mich. Ct. App. July 24, 2012) (citing *Old Kent Bank v. Sobczak*, 620 N.W.2d 663, 666-67 (2000)). A court should interpret a contract "according to its plain and ordinary meaning, avoiding technical or constrained constructions," and "must give effect to every word, phrase, and clause in a contract and avoid an interpretation that would render any part of the contract surplusage or nugatory." *Id.* (cleaned up). *See also Oklahoma Sch. Risk Mgmt. Tr. v. McAlester Pub. Sch.*, 457 P.3d 997, 1005 (Okla. 2019) ("The parties' agreement is read as a whole giving the language its ordinary and plain meaning to carry out the parties' intentions") (citation omitted); *Wholesale Gadget Parts, Inc. v. Glob. Cellular, Inc.*, No. 17-CV-4-JHP-TLW, 2017 WL 4276810, at *3 (N.D. Okla. Sept. 26, 2017) ("In determining the interpretation of a contract, the Court must not create an ambiguity by using a forced or strained construction, by taking a provision out of context, or by narrowly focusing on the provision.") (cleaned up) (applying Oklahoma law).

---

[6] Regarding contract interpretation principles, the parties rely on Oklahoma and federal law, even though the Agreement is governed by Michigan law. The Court therefore assumes the parties do not rely on "distinctive features of state law" and bases its decision on general contract law principles. *See Lawson v. Glob. Payments Inc.*, No. 18-cv-3360-PAB-SKC, 2019 WL 4412271, at *3 n.2 (D. Colo. Sept. 16, 2019) (cleaned up) (applying similar reasoning). To the extent any particular state or federal law may control, the Court perceives no material discrepancies between Oklahoma, Michigan, and federal common law.

### b.     Analysis of Plain Language of Forum Selection Clause

Interpretation of the Agreement's forum selection clause turns on the first two sentences.[7] The first sentence, the choice of law provision, states that, "[a]lthough [Plaintiff] may work for Stryker in various locations," the Agreement "shall be interpreted and enforced as a contract of Michigan" and "shall be interpreted and enforced" according to the internal laws of Michigan. Agreement at § 8.2. The second sentence, the forum selection provision, states that, "[i]n such circumstance," "any and all litigation" between the parties "relating to" the Agreement "will take place exclusively in Michigan and I consent to the jurisdiction of the . . . courts of that state."

Reading the plain language, the Court concludes the Agreement contains a clear, unequivocal, and mandatory forum selection clause, in which the parties agree that all litigation relating to the Agreement shall take place exclusively in Michigan. The Agreement states that litigation "*will* take place" exclusively in Michigan. "Will" is mandatory in character and synonymous with "shall" in this circumstance, meaning something that is required to take place as specified. *See Cardoni v. Prosperity Bank*, No. 14-CV-0319-CVE-PJC, 2014 WL 3369334, at *6 (N.D. Okla. July 9, 2014) (in finding forum selection clause mandatory, explaining that "use of the exclusive term 'shall' is also evidence that the parties intended to limit jurisdiction to a particular forum or forums"). *Cf. Dutton v. Wells Fargo Bank, N.A.*, No. 11-CV-352-CVE-PJC, 2011 WL 4526768, at *3 (N.D. Okla. Sept. 28, 2011) (finding forum selection clause was permissive where it did not contain any mandatory language such as "shall," "must," or "will"). Further, it states that litigation will take place "*exclusively* in Michigan." Use of a narrowing term such as "exclusively" demonstrates a clause is mandatory by indicating "that jurisdiction is appropriate only in the designated forum." *Excell*, 106 F.3d at 321. *Cf. Dutton*, 2011 WL 4526768,

---

[7] There is no dispute that the litigation in this case "relates to" the Agreement, thereby triggering the forum selection clause.

at *3 (concluding forum selection clause was permissive that did not include any term of exclusivity such as "exclusive," "sole," or "only"). The second sentence contains all the customary hallmarks of a mandatory forum selection clause, and this is the natural reading of such clause.

Plaintiff argues this forum selection clause is nonetheless permissive based on four arguments, all of which the Court rejects. First, Plaintiff argues that the connecting phrase "[i]n such circumstance" places a contingency on the forum selection clause that has not been triggered – namely, that the Agreement must be interpreted and enforced *under Michigan law*. As explained below in greater detail, Plaintiff argues that the Agreement *cannot* be interpreted and enforced under Michigan law, because non-solicitation and non-compete agreements violate Oklahoma public policy. Plaintiff contends the contingency is not triggered in this case, demonstrating that the clause is permissive. In contrast, Stryker contends the clause "[i]n such circumstance" refers simply to the "circumstance" of interpreting and enforcing the Agreement.

A natural reading of the phrase "[i]n such circumstance" is the preceding circumstance of "interpret[ing] and enforc[ing]" the Agreement, *i.e.*, any litigation or other legal challenge relating to the Agreement. Stryker urges this construction of the clause, and the Court agrees this is the clear and unequivocal meaning: the pre-requisite circumstance of interpreting and enforcing the Agreement must occur in order for the Michigan venue to become obligatory. Contrary to Plaintiff's argument, this construction of the phrase does not render it meaningless, because it refers to the immediately preceding, pre-requisite circumstance of interpreting and enforcing the Agreement.

Plaintiff's proposed interpretation of "such circumstance" – namely, as the circumstance of when Michigan law ultimately applies to the dispute – is strained, does not reflect the clause's ordinary and plain meaning, and could not possibly give effect to the parties' intent. Under Plaintiff's construction, it would be impossible to determine whether the Michigan venue selection

9

is triggered prior to filing suit, because the "trigger" of exclusive Michigan forum selection would depend on whether the presiding court can apply Michigan law. It could not have been the parties' intent to rely on this circular method to determine whether the "exclusive" Michigan forum selection is triggered. Further, Plaintiff's interpretation is contrary to the plain intent of the clause, which is to force employees to litigate all disputes over the Agreement in Michigan. Under Plaintiff's interpretation, any time an employee worked in a state with a public policy contrary to Michigan's, the "exclusive" venue provision would cease to have effect. It would render the crucial words "will" and "exclusively" meaningless. Plaintiff's construction of this phrase is not logical and results in a strained interpretation.

Second, Plaintiff argues use of the term "will" instead of "shall" in the phrase "will take place exclusively in Michigan" indicates permissive intent. The Court rejects this argument, because the term "will" is synonymous with "shall" in this phrase, meaning "must" or "required to" take place exclusively in Michigan. *See Cardoni*, 2014 WL 3369334, at *6; *Dutton*, 2011 WL 4526768, at *3. Plaintiff cites to no legal authority indicating otherwise.

Third, Plaintiff argues that reading the forum selection clause as mandatory requires disregarding the Agreement's authorization for an arbitrator to modify its non-compete and non-solicitation provisions. Plaintiff argues it would be inconsistent for the forum selection clause to provide exclusive venue in Michigan courts while also granting an arbitrator power to modify certain provisions of the Agreement. Plaintiff's argument is not compelling. Plaintiff provides no authority for the notion that arbitrability of a contract, including modification of contractual terms pursuant to arbitration, is incompatible with a mandatory forum selection clause in the event of litigation. Tenth Circuit law indicates otherwise. *See Am. Soda, LLP v. U.S. Filter Wastewater Grp., Inc.*, 428 F.3d 921, 927 & n.5 (10th Cir. 2005) (concluding that, "by consenting to state court jurisdiction and selecting the state courts as the 'exclusive forum,' the parties indicated their intent

10

to make venue exclusive in state court with respect to any disputes not resolved in arbitration," and rejecting argument that inclusion of "arbitrator" in forum selection clause rendered clause ambiguous).

Finally, Plaintiff argues in the alternative that the clause is ambiguous, which would require construction against Stryker as the drafter of the Agreement and thereby render it permissive. A forum selection clause may be considered ambiguous when it lacks clarity. *See, e.g., Citro Fla., Inc. v. Citrovale, S.A.*, 760 F.2d 1231, 1231-33 (11th Cir. 1985) (finding provision stating the "[p]lace of jurisdiction is Sao Paolo/Brazil" was ambiguous and therefore deemed permissive); *Caldas & Sons, Inc. v. Willingham*, 17 F.3d 123, 127-28 (5th Cir. 1994) (finding clause stating the "laws and courts of Zurich are applicable" was ambiguous because it did not clearly indicate parties' intent for Zurich to be the exclusive forum for adjudicating contractual disputes). In contrast to cases finding ambiguity, the clause at issue specifies a location and uses the word "exclusively." Plaintiff argues that the Agreement's forum selection clause is ambiguous, because the phrase "[i]n such circumstance" could potentially refer to either (1) interpreting and enforcing the Agreement, as Stryker posits, or (2) interpreting and enforcing the Agreement *under Michigan law*, as Plaintiff posits. As explained above, the Court rejects Plaintiff's interpretation of this language in the forum selection clause and finds the mandatory nature of this clause to be unambiguous and clear. The Court therefore finds no ambiguity or "lack of clarity" that must be construed against Stryker. Further, enforcement of the forum selection clause against Plaintiff is fair and reasonable. The provision expressly references the situation presented – namely, where an employee works for Stryker in various locations other than Michigan. It makes clear to an employee that Michigan is the exclusive venue for disputes with his employer, even if he works in another location. The forum selection clause requires that any and all litigation between the parties

11

relating to the Agreement, including the current declaratory judgment action, be brought exclusively in the federal and/or state courts of Michigan.

### 4. Modified § 1404(a) Transfer Analysis

Because the forum selection clause is valid and enforceable as mandatory, the Court must apply the modified § 1404(a) analysis to Plaintiff's claims. As explained above, under the modified analysis, Plaintiff's Oklahoma choice of forum merits no weight, and Plaintiff bears the burden to show why the Court should not transfer this case to Michigan. Further, the Court deems the private-interest factors to all weigh in favor of the Michigan forum. The Court considers only public-interest factors, which include "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; and the interest in having the trial of a diversity case in a forum that is at home with the law." *Atl. Marine*, 571 U.S. at 62 n.6 (cleaned up). "Because those factors will rarely defeat a transfer motion," the "practical result" is that the agreed Michigan forum will control unless "extraordinary circumstances" are present. *Id.* at 62, 66.

Plaintiff argues that Oklahoma's "important" local interest in deciding this dispute should override the forum selection clause. In particular, Plaintiff argues that the non-compete and non-solicitation provisions of the Agreement violate Oklahoma's strong public policy against enforcement of such provisions. Because there is a significant risk that Michigan courts would enforce those non-compete and non-solicitation provisions, Plaintiff urges the Court to retain this case to protect Oklahoma's public policy against such enforcement. Plaintiff argues a strong local interest exists in favor of Oklahoma, because he is an Oklahoma resident who worked in Oklahoma while employed by Stryker and subject to the Agreement.

If this Court were to retain the case in Oklahoma, the Court would indeed likely find the non-competition and non-solicitation provisions of the Agreement are void as contrary to

12

Oklahoma public policy. This is because "Oklahoma law voids all restraints of trade, except those made pursuant to the goodwill or dissolution of a partnership." *TruGreen Ltd. P'ship v. Okla. Landscape, Inc.*, 526 F. Supp. 3d 1080, 1088 (N.D. Okla. 2021) (quotation omitted) (applying Oklahoma law). *See* Okla. Stat. tit. 15, § 217 (declaring restraints of trade generally void, with limited exceptions).[8] Further, "[c]ourts have consistently found that Oklahoma maintains a strong public policy in opposition to the enforcement of restraints of trade, such as non-competition agreements, and courts have declined to apply contractual provisions selecting the laws of another state as applied to such agreements." *Traditions Health, LLC v. Huffman*, No. 24-CV-0163-CVE-MTS, 2024 WL 5078110, at *4 (N.D. Okla. Dec. 11, 2024) (collecting cases). Thus, it is likely that this Court would decline to apply Michigan choice of law to the Agreement's non-solicitation and non-competition provisions and would instead find those provisions void as a matter of Oklahoma public policy.

Conversely, if this Court transfers the case to Michigan, there is a substantial risk that the transferee court would apply the Agreement's Michigan choice of law and enforce its non-solicitation and non-competition provisions. *See, e.g., Stryker Corp. v. Ridgeway*, No. 1:13-CV-1066, 2015 WL 5682317, at *6 (W.D. Mich. Sept. 21, 2015) (explaining that Michigan law "allows non-competition agreements that are reasonable as to duration, geographical area, and the type of employment") (declining to apply Louisiana law even though plaintiff was a Louisiana citizen, Stryker employed plaintiff in Louisiana, and plaintiff's sales territory was limited to Louisiana,

---

[8] Oklahoma law does permit non-solicitation agreements against "direct[] solicit[ation of] the sale of goods, services or a combination of goods and services from the established customers of the former employer." Okla. Stat. tit. 15, § 219A(A). Although the Agreement contains a severability clause (Section 6.6), it remains an unresolved question whether the Court could indeed sever any invalid parts of the non-solicitation clause and uphold the remainder. *See TruGreen*, 526 F. Supp. 3d at 1090-91 (declining to judicially modify partially invalid non-solicitation clause despite severability provision, where non-solicitation clause violated § 219A and court would have to "rewrite the TruGreen agreements and supply material terms in order to rectify the violations").

because Louisiana did not have a "materially greater" interest than Michigan in the application of its law to the dispute).

This "local interest" weighs in Plaintiff's favor as a public interest factor, but it is not dispositive. United States District Judge Claire Eagan previously considered Oklahoma's public policy against non-competition agreements as a factor under the modified *Atlantic Marine* analysis. *See Cardoni*, 2014 WL 3369334, at *8. In a case presenting similar facts, the court concluded that this "local interest" factor did "not weigh heavily" in the analysis. *Id.* The court distinguished a prior decision, *Southwest Stainless, L.P. v. Sappington*, No. 07-CV-0334-CVE-PJC, 2008 WL 918706, at *4 (N.D. Okla. Apr. 1, 2008), in which the court refused to enforce Florida law because such law was contrary to Oklahoma public policy. The court stated:

> The Court finds that *Southwest Stainless* does not support plaintiffs' argument that a court may decline to enforce a forum selection clause when enforcement of the underlying contract could possibly result in a violation of an Oklahoma public policy. The undisputed evidence shows that plaintiffs signed an agreement that offered them a substantial salary and stock benefits and, in return, [the defendant] included a forum selection clause, a choice of law provision, and non-competition provisions as part of the agreement. Under *Atlantic Marine Constr. Co.,* plaintiffs cannot accept the benefits of the agreement without upholding their end of the bargain.

*Id.* at *8 (footnote omitted).

The Court agrees with and adopts *Cardoni*'s analysis. Plaintiff voluntarily signed the Agreement to maintain employment at Stryker, and Stryker obtained a forum selection clause, choice of law provision, and non-competition/non-solicitation provisions as part of the Agreement. Oklahoma's public policy against non-competition/non-solicitation agreements does not carry significant weight where Plaintiff clearly agreed to litigate all disputes relating to the Agreement in Michigan. Stated differently, Oklahoma's public policy on non-competition and non-solicitation agreements is not an "exceptional circumstance" that overrides the parties' mandatory Michigan forum selection clause.

Plaintiff asserts that Judge Eagan's decision in *Cardoni* was wrongly decided, because the transferee court, and appeals court, ultimately upheld the Texas choice-of-law provision in the non-solicitation agreement despite Oklahoma public policy against them. *See Cardoni v. Prosperity Bank*, 805 F.3d 573, 587-88 (5th Cir. 2015) (finding that "applying Texas law to this nonsolicitation agreement does not violate a fundamental policy of Oklahoma law merely because applying Texas law might lead to enforcement of a clause that would be invalid under the nuances of Oklahoma law"). However, this outcome does not render *Cardoni* wrongly decided. This was simply the natural and contemplated result of the transfer, which effectuated the "bargain" reached by the employer and employee to litigate disputes in Texas.

Plaintiff urges the Court to apply a California decision, in which an insured filed suit in California against an insurer for bad faith, despite a forum selection clause in the parties' agreement requiring litigation to occur in France. *Connex R.R. LLC v. AXA Corp. Sols. Assur.*, 209 F. Supp. 3d 1147, 1150 (C.D. Cal. 2016). Applying the modified *Atlantic Marine* factors, the court found there was a "strong local interest" in deciding the dispute in California, because France did not recognize bad faith as a cause of action. *Id.* at 1151 ("Where bad faith is alleged against an insurer, and the alternative forum provides no cause of action or remedies for such allegations, California has a 'materially great[ ]' interest in litigating the dispute in its district courts instead of dismissing or transferring the case"). The court therefore found the balance of factors weighed in favor of retaining the case in California, notwithstanding the forum selection clause. *Id.* The Court finds the analysis in *Connex*, involving an insurance agreement and a cause of action that was not recognized in the transferee court, inapposite to the circumstances of this case. The modified transfer analysis in *Cardoni*, a case in the Northern District of Oklahoma, is persuasive and directly applicable to the facts. As in *Cardoni*, the Court contemplates the possibility that the transferee

15

court would enforce the non-competition and non-solicitation clauses but does not find this factor dispositive.

Considering all the public interest factors, the Court concludes they do not demonstrate "exceptional" circumstances exist to outweigh enforcement of the forum selection clause. Plaintiff has not attempted to show that administrative difficulties or court congestion will affect Plaintiff's ability to receive a timely and fair trial in Michigan. The "local interest" factor weighs in Plaintiff's favor as an Oklahoma resident and worker with an interest in enforcing Oklahoma public policy. However, as explained above, the Court follows authority in this circuit reasoning that such factor "does not weigh heavily in favor of [Plaintiff] because of the choice of law provision in the agreement." *Cardoni*, 2014 WL 3369334, at *8. Transfer of this case would also align with judicial interests against forum shopping and a "race to the courthouse." Plaintiff has therefore not met his burden of showing that exceptional circumstances exist that counsel against transfer to the contractually selected forum. Stryker's request for transfer to the Western District of Michigan, Southern Division, is **GRANTED**.

### III.  Conclusion

For the reasons detailed above, Defendant Stryker's Motion to Transfer (ECF No. 7) is **GRANTED**. Defendant's alternative request to dismiss is **DENIED AS MOOT**.

**IT IS ORDERED** that the Court Clerk is directed to transfer this case to the United States District Court for the Western District of Michigan, Southern Division.

**SO ORDERED** this 2nd day of October, 2025.

*[signature]*
**JODI F. JAYNE, MAGISTRATE JUDGE**
**UNITED STATES DISTRICT COURT**